IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **TOBIAS COSGROVE,** | ) | **CASE NO. 8:09CV214** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **GREAT WEST CASUALTY COMPANY,** | ) ) ) | |
| Defendant. | | |

This matter is before the Court on the Defendant's Motion to Dismiss (Filing No. 18). Defendant argues that Plaintiff's first, second, and third causes of action are preempted by ERISA. For the reasons set forth below, the motion is denied.

## FACTS

Defendant Great West Casualty Company ("Great West") is a Nebraska corporation. (Filing No. 16, Amended Compl., ¶ 1.) Great West first hired Plaintiff Tobias Cosgrove in 1990 and employed him until 1994. (*Id.*, ¶ 2.) Great West hired Cosgrove again in 1997 and employed him continuously until terminating his employment on or about May 28, 2008. (*Id.*) On March 20, 2009, Cosgrove filed this action in the District Court of Lancaster County, Nebraska. (Filing No. 1-3.) Great West properly removed the action to this Court on June 29, 2009. (Filing No. 1.) Great West promptly moved to dismiss the Complaint on the grounds that Cosgrove's state-law claims were preempted by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). (Filing No. 2.) This Court denied Great West's motion as moot, subject to re-assertion, following the granting of Cosgrove's Motion for Leave to File an Amended Complaint. (Filing No. 15.) Thereafter, Cosgrove filed an amended complaint. (Filing No. 16.)

Cosgrove's Amended Complaint asserts four claims. First, Cosgrove alleges breach of employment contract because Great West terminated him in contravention of the "for cause" termination clause in Great West's employee handbook. Second, based on the same "for cause" provision, Cosgrove claims that Great West is estopped from asserting he is an "at-will" employee. Third, Cosgrove alleges detrimental reliance on the termination policies and "for cause" provisions in the employee handbook. Fourth, Cosgrove claims that his termination violated 29 U.S.C. § 1140, because it interfered with his rights under ERISA. Great Western filed the pending Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that Cosgrove's first, second, and third claims are preempted by ERISA because all four claims arise out of the same facts.

**STANDARD OF REVIEW**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Specifically, the complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" to substantiate the necessary elements of the plaintiff's claim. *Id.* at 556.

When ruling on a defendant's motion to dismiss, a judge must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint

may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that recovery is very remote and unlikely.'" *Id.* (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). The complaint, however, must still "include sufficient factual allegations to provide the grounds on which the claim rests." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950 (citing *Twombly,* 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

The preemptive effect of ERISA on causes of action arising out of state law is far reaching, but not limitless. ERISA states that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). Thus, ERISA preempts causes of action arising under state common law that "reference or pertain to an ERISA plan." *Eide v. Grey Fox Technical Servs. Corp.*, 329 F.3d 600, 604 (8th Cir. 2003). A state law claim "relates to" an ERISA plan if it (1) has a connection with or (2) references the plan. *Parkman v. Prudential Ins. Co.,* 439 F.3d 767, 272 (8th Cir. 2006). The Eighth Circuit has also stated

that a state claim relates to a plan where it "'premises a cause of action on the existence of an ERISA plan.'" *Estes v. Federal Express Corp.*, 417 F.3d 870, 872 (2005) (quoting *Prudential Ins. Co. v. Nat'l Park Med. Ctr.*, 154 F.3d 812, 822 (8th Cir. 1998)).  Each of Cosgrove's first three claims is a contract claim under the terms of Great West's employee handbook.  Thus, the central issue in this case is whether Cosgrove's claims under the provisions of the handbook are premised on an employee benefits plan.  Because the handbook does not have a connection with, or reference to, an ERISA plan, Cosgrove's first three causes of action are not preempted.

### *I.     Connection to the ERISA Plan*

To determine whether a state law is connected to an ERISA plan, a court looks to "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive as well as the nature of the effect of the state law on ERISA plans." *California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc.,* 519 U.S. 316, 325 (1997).  The Eighth Circuit has suggested a number of factors to consider when determining a state law's effect on an ERISA plan.  *Johnston v. Paul Revere Life Ins. Co.*, 241 F.3d 623, 630 (8th Cir. 2001).  These factors include:

> "(1) whether the state law negates a plan provision; (2) the effect on primary ERISA entities and impact on plan structure; (3) the impact on plan administration; (4) the economic impact on the plan; (5) whether preemption is consistent with other provisions of ERISA; and (6) whether the state law at issue is an exercise of traditional state power."

*Id.* (quoting *Bannister v. Sorenson*, 103 F.3d 632, 635 (8th Cir. 1996)).

In conducting this analysis, a court looks to the totality of the state law's impact on the ERISA plan.  A court considers both the number of factors favoring preemption and the

degree to which each factor favors preemption. *Wilson*, 114 F.3d at 717. None of these factors, discussed below, weighs heavily in favor of preemption.

### A. Negation of ERISA Plan Provision

The contractual provisions of Great West's employee handbook do not negate any ERISA plan provisions. The allegations in the Complaint do not suggest that any terms of the handbook conflict with any provisions in the ERISA plan. Further, Cosgrove does not seek recovery from the ERISA plan itself in his first three causes of action. Thus, Cosgrove's contractual claims do not negate provisions of Great West's ERISA plan.

### B. The Effect on ERISA Entities and Impact on Plan Structure

The terms of the employee handbook do not affect the relationship between ERISA entities or the ERISA plan's structure. The primary ERISA entities are the "employer, the plan, the plan fiduciaries, and the beneficiaries." *Arkansas Blue Cross & Blue Shield v. St. Mary's Hosp.*, 947 F.2d 1341,1346 (8th Cir. 1991). As stated above, the Complaint does not indicate that recovery on Cosgrove's contract claims would come from the plan itself. Thus, neither the plan, the fiduciaries, or the beneficiaries would be affected. While success on Cosgrove's first three claims would affect Great West, its effect would be felt regardless of the ERISA plan's existence. Great West would not be liable for its administration of the plan, but as a party to a contract. Because Great West faces no liability on the first three causes of action based on its role in the ERISA plan, its relationship with the other ERISA entities are not affected by Cosgrove's first three claims. Thus, Cosgrove's claims based on the employee handbook do not significantly impact primary ERISA entities or plan structure.

### C. *Impact on ERISA Plan Administration*

The terms of the handbook do not affect the ERISA plan's administration. The first three causes of action of the Complaint do not seek reimbursement from the ERISA plan itself. As more fully developed below, merely listing unpaid benefits as an item of damages does not imply that recovery would be paid out of the plan itself. Allowing Cosgrove to recover for contractually based claims does not prevent plan administrators from carrying out their duties, nor does it impose new duties on administrators. Accordingly, the handbook has no administrative impact on the plan.

### D. *Economic Impact on ERISA Plan*

Claims based on the employee handbook have no significant economic impact on the plan. "Tenuous, remote, and peripheral economic impact on ERISA plans, in itself, is not sufficient to find preemption." *Id.* at 1348 (internal quotations omitted). Allowing recovery on Cosgrove's first three claims would not affect the plan. Although the Complaint lists benefits as damages, there is no indication that these damages would be paid directly out of the plan. Thus, the handbook's terms do not have a significant economic impact on the ERISA plan.

### E. *Consistency with Other ERISA Provisions*

Great West does not identify, and the Court is not aware of, any ERISA provision that strongly supports preemption of Cosgrove's first three claims. Great West cites the prima facie elements of 29 U.S.C. § 1140 and argues that Cosgrove must prove that his termination was based on Great West's desire to avoid paying health costs in order to establish that his discharge was without cause. The Court disagrees. Proving Great West

breached an employment contract in firing Cosgrove without cause does not require that Cosgrove prove the actual cause. *See Koster v. P & P Enter., Inc.*, 539 N.W.2d 274, 275 (Neb. 1995). No other ERISA provisions must be proven to sustain employment contract claims where the contract is a free-standing agreement. *See Stearns v. NCR Corp.,* 297 F.3d 706, 710 (8th Cir. 2002); *Wilcott v. Matlack, Inc.*, 64 F.3d 1458, 1463 (10th Cir. 1995). Thus, no other ERISA provisions strongly support preemption.

### F. Exercise of Traditional State Power

Each of Cosgrove's first three claims is based on the contractual provisions of Great West's employee handbook. "In general, an employment contract between an employer and a non-union employee is governed by state law, not by ERISA or by the federal labor laws." *Stearns*, 297 F.3d at 710. The Tenth Circuit has permitted a breach-of-contract claim to go forward where the basis for recovery was "an employment agreement enforceable independently of any additional legal rights plaintiff may have had under the ERISA plan."[1] *Wilcott*, 64 F.3d at 1463. Cosgrove's allegations regarding the employee handbook sufficiently show that his claims for breach of contract, estoppel, and detrimental

---

[1] *But see, e.g. Johnson v. U.S. Bancorp*, 387 F.3d 939, 942 (8th Cir. 2004) (holding that ERISA preempted state law breach of contract theory where promise in alleged contract stated that "benefits would be paid *in accordance with* [the ERISA plan].")

reliance are independent of the ERISA plan.[2]  These claims are traditionally governed by state common law.  Accordingly, this factor does not support preemption.

None of the factors strongly indicates that Cosgrove's state law claims will have an impact on the ERISA plan.  Further, Cosgrove's first three claims do not undermine the objectives of ERISA.  Therefore, Cosgrove's contractual claims present no impermissible connection between the ERISA plan and Cosgrove's first three causes of action.

## II.     Reference to ERISA Plan

Cosgrove's first three claims do not impermissibly reference the ERISA plan.  A state law makes a prohibited "reference to" an ERISA plan when it "(1) imposes requirements by reference to ERISA covered programs, (2) specifically exempts ERISA plans from an otherwise generally applicable statute, or (3) premises a cause of action on the existence of an ERISA plan." *Prudential Ins. Co.*, 154 F.3d at 822 (internal quotations and citations omitted).  As stated above, an employment contract is generally governed by state law and not ERISA.  *Stearns*, 297 F.3d at 710.  Only where the employment contract provides welfare or pension benefits through a covered ERISA plan will ERISA completely preempt state-law breach-of-contract remedies.  *Id.*  Thus, to avoid preemption, the basis of a state law claim must be free-standing and not premised on an existing ERISA plan.  *Antolik v. Saks, Inc.*, 463 F.3d 796 (8th Cir. 2008).

---

[2] In contrast, the Supreme Court in *Ingersoll-Rand v. McClendon*, 498 U.S. 133, 135-36 (1990), held that ERISA preempted a wrongful discharge claim where the plaintiff claimed the real reason for termination was to avoid paying pension benefits. However, the cause of action for "wrongful termination" did not arise under an employment contract; rather, it arose under a public policy exception to the employment at-will doctrine.  *Id.* at 136.  The Supreme Court reasoned that the claim was not enforceable independent of the ERISA plan.  *Id.* at 140.

In this case, Cosgrove's first three claims do not impermissibly reference Great West's ERISA plan. Cosgrove does not claim that Great West breached the ERISA plan. Rather, Cosgrove claims Great West breached an employment contract that operates irrespective of the ERISA plan. Cosgrove's claims for estoppel and detrimental reliance are based on the same handbook language and make no reference to, and operate independently from, Cosgrove's ERISA claim. Cosgrove alleges the handbook contained a "dismissal for cause" provision that essentially stated an employee could only be terminated for cause. He also alleges that the handbook contained a progressive discipline policy and "punishment fits the crime" policy. Cosgrove's first claim states that his termination constituted breach of contract because Great West fired him without cause and failed to follow the progressive discipline policy. Cosgrove's second claim alleges that Great West should be estopped from asserting Cosgrove was an "at-will" employee because of the same provisions in the handbook. The third claim alleges that Cosgrove detrimentally relied on the same provisions in the handbook. The success or failure of each of these inter-related claims depends in no way on an ERISA plan. Based on Cosgrove's allegations, the employee handbook that is the basis of Cosgrove's first three claims is a free-standing agreement. It cannot be argued that the "existence of a[n] [ERISA] plan is a critical factor in establishing liability." *Ingersoll-Rand*, 498 U.S. at 140. None of these claims is premised on the existence of an ERISA plan.

The first and second claims do mention Cosgrove's loss of past and future income and benefits. To recover under Nebraska law for breach of contract, "'the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.'" *168th and Dodge, LP v. Rave*

9

*Reviews Cinemas, LLC*, 501 F.3d 945, 950 (8th Cir. 2007) (quoting *Phipps v. Skyview Farms, Inc.*, 497 N.W.2d 723, 730 (Neb. 2000)). "Even if an action refers to a plan, . . . the action will not relate to the plan for preemption purposes when the action only peripherally affects the plan." *Crabbs v. Copperweld Tubing Prod. Co.*, 114 F.3d 85 (6th Cir. 1997). For example, the Sixth Circuit has held that references to ERISA plans do not "relate to" the plans where the reference is simply a component of the sum of damages. *Wright v. General Motors Corp.*, 262 F3d 610, 615 (6th Cir. 2001). Similarly, the Fourth Circuit has stated that claims for wrongful termination in violation of an employment contract are not preempted by ERISA. *Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989). The Fourth Circuit reasoned that even though a plaintiff's recovery might be measured in part by ERISA plan benefits, it would not become an obligation of the plan. *Id.* at 121.

Cosgrove lists the benefits of the plan merely as an element of damages. The ERISA plan would remain unaffected if Cosgrove succeeded in his claim as the Complaint does not indicate that damages should be recovered from the plan itself. Thus, Cosgrove's ancillary statement of lost benefits does not impermissibly make "reference to" the plan such that Cosgrove's state-law claims are preempted.

Because Cosgrove's first three claims are not premised on the existence of an ERISA plan, the claims do not impermissibly make "reference to" an ERISA plan and are not preempted.

## CONCLUSION

Cosgrove's first three causes of action are not impermissibly connected to Great West's ERISA plan as they do not significantly affect the ERISA plan nor do they offend ERISA's objectives. Cosgrove's contractual claims are not premised on the existence of

the plan and, therefore, do not reference the ERISA plan.  Because Cosgrove's first three claims do not have a connection with or reference to the plan, they are not preempted by ERISA.

Accordingly,

IT IS ORDERED that the Defendant Great West Casualty Insurance Company's Motion to Dismiss Plaintiff Tobias Cosgrove's First, Second, and Third Theories of Recovery (Filing No. 18) is denied.

DATED this 16th day of October, 2009.

BY THE COURT:

S/Laurie Smith Camp
United States District Judge